**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

ECKARD LAND & ACQUISITION, L.L.C., and ECKARD EXPLORATION & PRODUCTION, L.L.C.,

Plaintiffs,

vs. Case No. 3:26-cv-03829-MCR-ZCB

BRUCE COMPTON, DISPOSITIVE MOTION

Defendant.
_________________________________/

# MOTION TO DISMISS FIRST AMENDED COMPLAINT

Defendant Bruce Compton ("Compton") moves to dismiss the First Amended Complaint (the "Amended Complaint") filed by Plaintiffs Eckard Land & Acquisition, L.L.C., and Eckard Exploration & Production, L.L.C. ("Plaintiffs"), pursuant to Federal Rule of Civil Procedure 12(b)(6) and the District Court's inherent authority to manage its docket to avoid duplicative claim splitting. In the alternative, Compton moves for a stay pursuant to the *Colorado River* abstention doctrine pursuant to Federal Rules of Civil Procedure 12(b)(1) and/or 12(b)(6) pending resolution of a previously filed state court proceeding in Texas involving the same facts and circumstances at issue in this matter.

**Preliminary Statement and Background**

Remarkably, Plaintiffs allege Compton participated in a scheme to misappropriate the very trade secrets attached to the Amended Complaint without any trade secret protection. In any event, the Amended Complaint should be dismissed as a textbook example of claim-splitting: Plaintiffs raise the same claims against Compton that they filed against him and his company two years ago in a case still pending in Texas. Although Plaintiffs made some cosmetic changes to their original Complaint to try to avoid this Court's dismissal of their claims here, that cannot change the record of the long-pending Texas Action, and dismissal of this duplicative proceeding is required.

In May 2024, these same Plaintiffs filed a lawsuit based on the same facts in Texas state court, in the county where Plaintiffs reside, against Compton and other defendants, styled *Eckard Land & Acquisition, L.L.C., et al. v. Harbott Minerals, L.L.C., et al.*, Case No. 471-03419-2024, in Collin County, Texas (the "Texas Action").[1] Two interlocutory appeals filed in 2025 also remain pending in the Court

[1] The Original Petition, First Amended Petition, and Second Amended Petition from the Texas Action are included as Exhibits A, B, and C. The docket is available electronically at https://apps2.collincountytx.gov/JudicialOnlineSearch2/case/42d4f569-e2c0-48c9-b24a-938e37243211 and is attached as Exhibit D hereto. To the extent there is any question as to their use, Compton requests that the Court formally take judicial notice of Exhibits A through D. *See Navarro v. City of Riviera Beach*, 192 F. Supp. 3d 1353, 1365 (S.D. Fla. 2016) (stating that on a motion to dismiss, "courts may take judicial notice of public records, such as a pleading filed in another court, because such documents are 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned' . . . to establish what those documents contain, [but] not the veracity of their contents") (quoting *Bryant v. Avado Brands, Inc.*, 187 F.3d

of Appeals for the Fifth District of Texas at Dallas, addressing the Texas district court's temporary injunction order and denial of personal jurisdiction defenses raised on special appearance by certain defendants.[2]

The Amended Complaint removes the original Complaint's purportedly mistaken allegation that "Compton, individually, is not named as a Defendant in the Texas Action" (Doc. 1, Compl. ¶ 26),[3] and explains instead that (although named as a Defendant) Compton is not *actually* a Defendant in the Texas Action notwithstanding the following:

---

1271, 1278 (11th Cir. 1999)). "Where parallel proceedings in state court are at issue, as here, the Court may consider the state-court proceedings without converting a motion to dismiss into one for summary judgment." *Kantsepolsky v. River Shores Ass'n, Inc.*, No. 25-cv-61725-DAMIAN/STRAUSS, 2025 WL 3965060, at *2 (S.D. Fla. Dec. 12, 2025) (citing *Lozman v. City of Riviera Beach*, 713 F.3d 1066, 1076 n.9 (11th Cir. 2013) ("Although this matter is before the court on a motion to dismiss, we may take judicial notice of the court documents from the state eviction action.")), *report and recommendation adopted*, No. 25-61725-CIV-DAMIAN/STRAUSS, 2025 WL 3763815 (S.D. Fla. Dec. 30, 2025).

[2] *See FourSite Capital, LLC d/b/a FourSite Energy v. Eckard Land & Acquisition, L.L.C., et al.*, No. 05-25-01705-CV (Tex. App. 5th - Dallas); *Ashley Donarski, Darcy Harbott, Ryan Raymond, Natalie Raymond, Michelle Hughes, Individually, and Foursite Capital, LLC d/b/a Foursite Energy and Jess Weaver v. Eckard Land & Acquisition, L.L.C. and Eckard Exploration & Production, L.L.C.*, No. 05-25-01304-CV (Tex. App. 5th - Dallas).

[3] Compton acknowledges that "[i]f a plaintiff amends [its] complaint, the new pleading supersedes the old one: The original pleading no longer performs any function in the case." *Royal Canin U. S. A. v. Wullschleger*, 604 U.S. 22, 35 (2025) (internal quotations omitted). Thus, Compton's references to the original Complaint are not intended to stand alone as arguments in favor of dismissal but rather are intended to demonstrate that Plaintiffs' thinly veiled attempts to obscure the facts originally alleged do not overcome the ultimate conclusions that arise even from an exclusive reading of the Amended Complaint.

- the first paragraph of the Original Petition in the Texas Action identifies "Bruce Compton" as a "Defendant" (Ex. A at 1);
- the first paragraph of the Second Amended Petition in the Texas Action (the current petition) also identifies "Bruce Compton" as a "Defendant" (Ex. C at 1);
- "Bruce Compton" is listed as a defendant on the clerk's docket of the Texas Action (Ex. D at 3); and
- the Plaintiffs' Brief in the temporary injunction appeal, filed on June 3, 2026, (after the original Complaint in this case) with the Fifth District of Texas at Dallas, identifies "Bruce Compton" as a defendant in the Texas Action (Ex. E at 14 n.2).

Nor do any of these documents describe Compton as being named in any limited capacity or different capacity than he is named here. Plaintiffs ask the Court to treat these as inadvertent drafting errors in the Texas Action since Compton is now allegedly not a Defendant there, essentially asking the Court to ignore the multiple public filings that directly contradict Plaintiffs' allegations here.

To be sure, Compton has not been served or appeared in the Texas Action, and he was omitted from case captions of the petitions cited above, but that does not overcome the fact that the Plaintiffs' own petitions directly allege that he is a defendant in Texas. (Exs. A & C). The 471st District Court of Collin County, Texas,

also believes him to be a defendant and has listed him as such on its docket sheet. (Ex. D. at 3).[4] Moreover, because the Amended Complaint repeatedly references the Plaintiffs' case in Texas, the Texas petitions are incorporated by reference and control over contrary allegations for purposes of a motion to dismiss.[5]

But even if Plaintiffs were correct that Compton was never a defendant in the Texas Action or that naming him there can be disavowed to avoid claim splitting here, this case should still be dismissed as improper claim-splitting because Compton is in privity with other defendants named in that action, particularly FourSite Capital LLC ("FourSite"), a finding which the ultimate facts alleged in the Amended Complaint require.[6]

The Amended Complaint's own description of the Texas Action clearly animates the policies behind avoiding claim-splitting and its inefficiencies: waste of

[4] Plaintiffs state that Compton's inclusion in the Texas Action "was simply a mistake, which is in the process of being corrected in Texas." (Am. Compl. ¶29). As of the date of filing this Motion, Compton remains listed as a defendant on the docket sheet of the Texas Action. Thus, Plaintiffs have not demonstrated that the court in the Texas Action has acknowledged Compton's inclusion as a defendant on the clerk's docket as a mistake. Nor could it as he was initially listed as a defendant.

[5] "[A] document need not even be physically attached to a pleading to be incorporated by reference if the document's contents are alleged in the complaint and no party questions those contents." *Jackson v. Dolgencorp, LLC*, No. 1:22-CV-01686-SEG-JEM, 2022 WL 18777539, at *3 (N.D. Ga. Nov. 10, 2022), *report and recommendation adopted*, No. 1:22-CV-1686-SEG, 2023 WL 2908833 (N.D. Ga. Feb. 3, 2023).

[6] Plaintiffs attempt to retreat from this concession in the Amended Complaint, but the concession remains. (*See, e.g.*, Am. Compl. ¶22 ("FourSite is owned . . . 30% by Compton"); ¶24 (the Eckard Investors created FourSite "with Compton's assistance"); ¶58 ("Compton, individually, both directly and indirectly")).

scarce judicial resources and potential for conflicting results. For example, Plaintiffs allege they already received a temporary injunction against FourSite. (Am. Compl. ¶¶37-38). But tellingly, the Amended Complaint acknowledges that, "[u]pon information and belief, FourSite is moving to have the Temporary Injunction reconsidered, dissolved and/or modified in the Texas Action." (*Id.* ¶39). Indeed, Plaintiffs should be aware, beyond "information and belief," that FourSite has in fact moved to reconsider, dissolve, and/or modify the temporary injunction, and also that FourSite has in fact appealed the temporary injunction, all of which is clear from the docket in the Texas Action.[7] Plaintiffs' own brief in that Texas appeal—recently filed on June 3, 2026, *after* the original Complaint was filed in this action—states that Compton is a defendant in the Texas Action.[8] Notwithstanding that background,

[7] *See* Ex. D at 21-23 (reflecting Jan. 16, 2026, filing of "*Foursite's Emergency Motion to Reconsider Dissolve, and/or Modify Temporary Inju[n]ctions*"; Feb. 13, 2026, filing of "*Plaintiffs' Response to Foursite's Emergency Motion to Reconsider, Dissolve, and/or Modify Temporary Injunction*"; and Dec. 22, 2025, filing of "*Defendant Foursite Capital, LLC's Notice of Appeal*"); *see also Martin v. Hogue*, No. 8:11–CV–228–T–33MAP, 2011 WL 2894986, at *2 (M.D. Fla. July 20, 2011) (taking judicial notice on 12(b)(6) motion of the Clerk of Court for the Thirteenth Judicial Circuit's progress docket).

[8] As noted above, FourSite has appealed the Temporary Injunction with the Court of Appeals for the Fifth District of Texas at Dallas, Case No. 05-25-01705-CV, which remains pending. Plaintiffs in this case filed their response brief as appellees in that case on June 3, 2026, which is attached as Exhibit E hereto. In that brief, Plaintiffs conceded:

> Eckard's First Amended Petition [in the Texas Action] brought suit against Harbott, individually, Harbott Minerals, R&N Ventures, LLC, Ryan Raymond, Natalie Raymond, Crude Oil Ventures, LLC, Jess Weaver, Michelle Hughes, Logy D, LLC, Ashley Donarski, ***Bruce Compton***, Tamar Hermes, Alan Finkle, and FourSite.

the Amended Complaint asks this Court to enter injunctive relief on the same issues, apparently in recognition that the Texas Action's injunction may not survive reconsideration or appeal. (*Id.* ¶59, ¶61, and the Wherefore clauses following Counts 1 and 2).

All these parallel and duplicative aspects of the two cases reveal that the lawsuit here is simply an effort to take a second bite at the apple to litigate the exact same issues that are already well underway in Texas. As a result, this action should be dismissed because it flatly violates the Eleventh Circuit's rule against splitting of causes of action.

In the alternative, this case should be stayed under the *Colorado River* abstention doctrine due to the pendency of state court litigation on all the issues raised in the Amended Complaint. In particular, abstention would avoid inefficient and piecemeal litigation and potentially conflicting results between this Court and a state court action that has already substantially progressed over two years, including two issues that are already under interlocutory appeal before Texas appellate courts.

---

(Ex. E at n.2 (emphasis added).) As with Exhibits A through D, the Court is permitted to, and Compton requests that the Court does, take judicial notice of Exhibit E. *See* n.1 *supra*.

## Argument and Incorporated Memorandum of Law

### I. THE AMENDED COMPLAINT SHOULD BE DISMISSED DUE TO IMPERMISSIBLE SPLITTING OF CAUSES OF ACTION.

#### A. Legal Standards

This action must be dismissed because it violates the rule against splitting causes of action. Put simply, "[t]he rule requires 'a plaintiff to assert all of its causes of action arising from a common set of facts in one lawsuit.' " *Flanagan v. Miami Jewish Health Sys., Inc.*, No. 4:17-cv-507-RH/CAS, 2018 WL 11506054, at *1 (N.D. Fla. May 15, 2018) (quoting *Vanover v. NCO Fin. Servs., Inc.*, 857 F.3d 833, 841 (11th Cir. 2017)). "A species of res judicata, the rule precludes a plaintiff from filing a second lawsuit before the first has reached final judgment, if 'the first suit, assuming it were final, would preclude the second suit.' " *Flanagan*, 2018 WL 11506054, at *1 (quoting *Vanover*, 857 F.3d at 841); *see also Johnson v. Cap. One Fin. Corp.*, No. 1:25-cv-2839-MLB, 2026 WL 790870, at *2 (N.D. Ga. Mar. 6, 2026).

As the Eleventh Circuit in *Vanover* explained, "[b]y spreading claims around in multiple lawsuits in other courts or before other judges, parties waste scarce judicial resources and undermine the efficient and comprehensive disposition of cases." 857 F.3d at 841 (quoting *Katz v. Gerardi*, 655 F.3d 1212, 1217 (10th Cir. 2011)) (citation modified). "The claim-splitting doctrine thus 'ensure[s] fairness to litigants and . . . conserve[s] judicial resources.' " *Id.* (quoting *Greene v. H & R*

*Block E. Enters., Inc.*, 727 F. Supp. 2d 1363, 1367 (S.D. Fla. 2010)). "[T]he claim-splitting rule exists to allow district courts to manage their docket and dispense with duplicative litigation." 857 F.3d at 841 (quoting *Katz*, 655 F.3d at 1218-19).

For this reason, "[t]he Eleventh Circuit has said a second lawsuit is barred if (1) 'the case involves the same parties and their privies,' and (2) the 'separate cases arise from the same transaction or series of transactions.' " *Flanagan*, 2018 WL 11506054, at *1 (quoting *Vanover*, 857 F.3d at 841-42). "Successive causes of action arise from the same transaction or series of transactions when the two actions are based on the same nucleus of operative facts." *Klayman v. Porter*, No. 22-13025, 2023 WL 2261814, at *3 (11th Cir. Feb. 28, 2023) (quoting *Vanover*, 857 F.3d at 842).

### B. Plaintiffs' Claims Here Involve the Same Parties or their Privies as in the Texas Action

The Texas Action involves claims by the exact same Plaintiffs—and only those Plaintiffs—that have brought this action against Compton. As explained above, although the Amended Complaint alleges that Compton was only inadvertently named as a Defendant (Am. Compl. ¶27, ¶29), this allegation is directly contradicted by the Texas Action petitions, which are incorporated by reference into the Amended Complaint along with other Texas pleadings. Where an allegation is contradicted by a document incorporated by reference, the document

controls.[9] This contradiction is further confirmed by the clerk's own docket sheet in the Texas Action and Plaintiffs recently filed brief in the temporary injunction appeal.

But even if Compton were not properly named as a defendant in the Texas Action, that would not preclude dismissal based on improper splitting of causes of action, since Compton is in privity with other defendants in the Texas Action. The Amended Complaint here expressly alleges that:

> Darcy Harbott formed an entity with Alan Finkle and Defendant Compton called FourSite Capital, L.L.C. d/b/a FourSite Energy ("FourSite"). Foursite is owned 50% by Harbott (through his affiliated trust), 30% by Compton and 20% by Finkle.

(*Id.* ¶22). Harbott and his affiliated trust, Finkle, and FourSite, are also all defendants in the Texas Action. Both the Texas Action and this action focus on the alleged use of Plaintiffs' purportedly confidential trade secret information by FourSite and by "Compton, individually, both directly and indirectly."[10] (*Id.* ¶58). The pleadings in

---

[9] *See* n.5 *supra*.

[10] Compton assumes Plaintiffs mean that he acted indirectly through FourSite. Compton explained his role managing the day-to-day operations of FourSite in volume two of the temporary injunction hearing in the Texas Action, which is attached as Exhibit F hereto:

> Q. And what -- aside from being a 30 percent owner, do you have any other roles with FourSite?
>
> A. I purchase all the leases, get all the title proved up, make all the well elections. I do all the letter-agreement negotiations with the operators. I typically pay the majority of the completed well costs on spud elections.

(*See* Ex. F p. 98, ll. 18-24). The Court may consider this transcript without converting this Motion to a motion for summary judgment because the transcript is incorporated by reference. *See* n.5

both actions allege that FourSite and its members were part of a scheme to access and misappropriate Plaintiffs' purported trade secrets related to oil and gas investments in the Anadarko Basin of Oklahoma. (*Id.* ¶14, ¶24, ¶39, ¶50; Ex. C, ¶23, ¶24, ¶37). That is to say, Compton is being sued in Florida for his involvement in the same conduct that is the focus of Texas Action against FourSite and FourSite's two other members.

Moreover, Plaintiffs cannot circumvent privity by alleging, in contravention of the record, that the parties to the Texas Action are not the same as the parties in this action. *See, e.g.*, *Santo v. Aerostar Training Servs., LLC*, Case No: 6:24-cv-1283-GAP-EJK, 2024 WL 6984159, at *4 (M.D. Fla. Oct. 8, 2024) (finding "frivolous" an argument that "there is no claim splitting in [a] case because the 'parties in both actions are not identical' " and holding that "the [claim-splitting] doctrine plainly applies to 'parties *and their privies*' and does not require that the parties be identical." (quoting *Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1236 (11th Cir. 2021)) (emphasis in original)). Plaintiffs likewise cannot circumvent

---

*supra*; *see also Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024) ("[W]hen resolving a motion to dismiss or a motion for judgment on the pleadings, a court may properly consider a document not referred to or attached to a complaint under the incorporation-by-reference doctrine if the document is (1) central to the plaintiff's claims; and (2) undisputed, meaning that its authenticity is not challenged."). The transcript addresses claims identical to those made against Compton here, and so is central to Plaintiff's claim. And Plaintiffs conceded the authenticity of the transcript when they cited the transcript in the Amended Complaint without challenging its authenticity therein.

privity by making a conclusory statement of law that "[n]or is Compton in 'privity' with any party in the Texas Action, as that term is generally understood in the context of 'claim-splitting' or other 'claim preclusion' purposes." (Am. Compl. ¶ 35). On a motion to dismiss, a court will "not assume that any legal conclusions are true." *Black Voters Matter Fund v. Sec'y of State for Ga.*, 11 F.4th 1227, 1231 (11th Cir. 2021) (quoting *Estrada v. Becker*, 917 F.3d 1298, 1302 (11th Cir. 2019)); *see also Santo*, 2024 WL 6984159, at *2 ("Conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." (internal quotations omitted)).

In a further attempt to avoid the plain showing of privity between Compton and FourSite, Plaintiffs added a series of allegations to their Amended Complaint that

> there is no indication in the Texas Action that Compton ever controlled or financed any of the litigation or litigation strategies on behalf of the defendants there, including on behalf of FourSite. Additionally, with respect to FourSite, he is only a minority (30%) owner, so by definition, he does not have a controlling interest in that entity. Nor is there any allegation that he is the alter-ego of FourSite, unlike the Eckard Investors, who held a prior and distinctly different business relationship with Eckard, and are explicitly alleged to be FourSite's alter ego.

(Am. Compl. ¶35). While control over litigation, ownership percentages, and alter ego status are means by which privity may be established, they are certainly not the only means and are not required to establish privity. Indeed, privity may be found where the defendants in the split cases "are in 'a substantive legal relationship,' such

that if one or two were not present in the [s]tate [c]ase, they would still be bound and represented by the third." *Santo*, 2024 WL 6984159, at *4 (quoting *Rodemaker v. City of Valdosta Bd. of Educ.*, 110 F.4th 1318, 1327-28 (11th Cir. 2024)); *see also Martinez v. Market Traders Inst., Inc.*, 757 Fed. Appx. 815, 818 (11th Cir. 2018) (finding privity where defendants were officers of entities named in the prior proceedings).

Because Compton is, at the very least, in privity with FourSite, the rule against splitting causes of action applies whether Compton is a formal defendant in the Texas Action or not. *See, e.g.*, *Flanagan*, 2018 WL 11506054, at *1 ("Miami Jewish is not a party to the first case, but, according to the plaintiffs, Molina and Miami Jewish are joint employers. They are in privity."). This is particularly true under the flexible standards to determine privity, where there can be no question that privity between Compton and FourSite would apply here because Compton did in fact manage FourSite's day-to-day operations. *See, e.g.*, *Rodemaker*, 110 F.4th at 1327 ("Privity is not a concept whose boundaries have been staked out with mathematical precision. It has been somewhat circularly defined as the 'relationship between one who is a party of record and a nonparty that is sufficiently close so a judgment for or against the party should bind or protect the nonparty.' " (quoting *Nat'l Ass'n for the Advancement of Colored People (NAACP) v. Hunt*, 891 F.2d 1555, 1560 (11th Cir. 1990))), *cert. denied*, 145 S. Ct. 2701 (2025); *see also Martinez*, 757 Fed. Appx.

at 818 ("Privity is a 'flexible legal term' " (quoting *Cook v. State* 921 So. 2d 631, 635 (Fla. 2d DCA 2005))).

**C. The Amended Complaint Arises from the Same Operative Facts at Issue in the Texas Action**

As to the second element, the separate cases also clearly arise from the same transaction or series of transactions. The Amended Complaint itself makes numerous allegations confirming the overlap of its claims with the Texas Action. Paragraphs 26 through 40 of the Amended Complaint specifically discuss the Texas Action, describe the claims filed in the Texas Action, quote testimony at a hearing in the Texas Action, quote the temporary injunction order in the Texas Action, and discuss other aspects of the Texas Action, which the Plaintiffs clearly believe support their claims here. The Amended Complaint's allegations about the Texas Action also expressly discuss Compton and confirm that, in Plaintiffs' own view, the Texas Action has been fully litigating the facts that underlie their allegations against Compton here:

> 40. Indeed, as the Texas state court found, between FourSite's inception in May 2023 through the time the Temporary Injunction was entered on December 5, 2025, FourSite acquired no fewer than twenty-eight (28) leases in the Anadarko Basin in Oklahoma in the same areas of investment they learned about through the Eckard Investors' investments with Eckard.
>
> 41. Each and every one of these leases was obtained in direct contravention of the Eckard Investors' contractual obligations and, **in concert with Compton**, in Florida, were done with the intent of

> defrauding and stealing from Eckard, including stealing its trade secrets.

(Am. Compl. ¶¶40-41 (emphasis added).)[11] Thus, for purposes of applying the rule against splitting causes of action, "the two cases plainly arise from the same transaction or series of transactions." *See Flanagan*, 2018 WL 11506054, at *1. Accordingly, the Amended Complaint must be dismissed based on impermissible claim-splitting.

## II. ALTERNATIVELY, THIS ACTION SHOULD BE STAYED PURSUANT TO THE *COLORADO RIVER* PRUDENTIAL ABSTENTION DOCTRINE.

### A. Legal Standards

In the alternative, this action should be stayed under *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817-18 (1976) to conserve judicial resources and allow for a comprehensive—rather than piecemeal—disposition of the dispute between the parties. The "*Colorado River* analysis is

[11] To avoid the privity issue, the Amended Complaint attempts to obscure the allegations. The Amended Complaint removes a reference to actions taken by FourSite through Compton, Harbott, and Finkle. (*Compare* Doc. 1, Compl. ¶31, *with* Am. Compl. ¶40). This defies reason. As a limited liability company, FourSite must act *through* a natural person. As has been demonstrated in the Texas Action, FourSite's day-to-day actions were taken *through* Compton. *See* n.10 *supra*.

The Amended Complaint also removes several references to actions taken by Compton through FourSite while failing to allege how Compton took those actions in his individual capacity. (*Compare* Doc. 1, Compl. ¶24, *with* Am. Compl. ¶24; Doc. 1, Compl. ¶41, *with* Am. Compl. ¶50; Doc. 1, Compl. ¶42, *with* Am. Compl. ¶51; Doc. 1, Compl. ¶48, *with* Am. Compl. ¶57; Doc. 1, Compl. ¶49, *with* Am. Compl. ¶58).

Compton is in privity with FourSite. Plaintiffs cannot avoid this result simply by removing instances where "Compton" and "FourSite" were mentioned together in the original Complaint.

applicable as a threshold matter when federal and state proceedings involve substantially the same parties and substantially the same issues," which is plainly true here for the same reasons discussed above and the records attached. *Ambrosia Coal & Constr. Co. v. Pagés Morales*, 368 F.3d 1320, 1330 (11th Cir. 2004). None of the revisions in the Amended Complaint change this result.

"Where parallel proceedings in state court are at issue, as here, the Court may consider the state-court proceedings without converting a motion to dismiss into one for summary judgment." *Kantsepolsky*, 2025 WL 3965060, at *2 (citing *Lozman*, 713 F.3d at 1076 n.9 ("Although this matter is before the court on a motion to dismiss, we may take judicial notice of the court documents from the state eviction action.")). Moreover, "to the extent that this Court considers abstention arguments to be within the purview of Federal Rule of Civil Procedure 12(b)(1), consideration of materials beyond the four corners of the complaint is permitted." *U.S. v. All Right to & Int. in PNC Corp. Plaza Holdings LLC*, No. 20-cv-23278-GAYLES/GOODMAN, 2022 WL 17653218, at *7 (S.D. Fla. Sept. 28, 2022), *report and recommendation adopted sub nom. U.S. v. PNC Corp. Plaza Holdings LLC*, No. 1:20-cv-23278-GAYLES/GOODMAN, 2023 WL 22158 (S.D. Fla. Jan. 3, 2023).

Courts consider several factors in deciding whether to defer to state proceedings, including: (1) whether either court has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding

piecemeal litigation; (4) the order in which the courts obtained jurisdiction; (5) whether federal law provides the rule of decision; and (6) the adequacy of the state court to protect the federal plaintiffs' rights. *See Preston v. Fishman*, No. 8:10–cv–2300–T–23TBM, 2011 WL 129843, at *1 (M.D. Fla. Jan. 14, 2011). No single factor is dispositive; the weight of a particular factor depends on the circumstances of the case. *Id.* However, "[o]ne factor alone can be the sole motivating reason for the abstention." *Id.* (internal citation omitted).

### B. Abstention is Required Here

Here, the totality of circumstances strongly favors abstention, beginning with the fact that these actions are parallel for the same reasons already discussed above. The first factor, whether either court has assumed jurisdiction over property, is likely neutral since neither lawsuit appears to seek jurisdiction over property *in rem*. *See Maharaj v. Sec'y for the Dep't. of Corrs.*, 432 F.3d 1292, 1306 (11th Cir. 2005) (first factor not at issue when jurisdiction over property not involved). But it is worth noting that the Amended Complaint itself alleges the court in the Texas Action has enjoined FourSite from, among other things, "closing on the sale of any pending oil and gas leases in the Anadarko Basin." (Am. Compl. ¶38). Because the court in the Texas Action has already asserted its injunctive power to encompass the rights concerning these types of property interests, the first factor may lean toward abstention, if not neutrality.

The second factor, the inconvenience of the federal forum, strongly favors abstention even though Compton is located in Florida. "The inconvenience factor focuses primarily on the 'physical proximity of the federal forum to the evidence and witnesses.' " *Am. Bankers Ins. Co. of Fla. v. First State Ins. Co.*, 891 F.2d 882, 885 (11th Cir. 1990) (internal citation omitted). Indeed, Plaintiffs themselves selected Texas—and in particular the county in which they are located—as the forum to bring claims on these issues concerning investments in the Anadarko Basin in Oklahoma against numerous defendants (including Compton). Although Compton lives in Florida, the facts alleged in the Amended Complaint itself strongly indicate that Florida is not the most convenient forum for the parties and prospective witnesses to address these claims, since all the other alleged conduct, parties and witnesses appear to be located elsewhere. Indeed, the Amended Complaint inserts additional allegations to establish that Compton's conduct took place in Florida, but these allegations are conclusory at best.

The third factor, the desirability of avoiding piecemeal litigation, weighs heavily in favor of abstention. "[A]s it is properly understood, *Colorado River*'s factor concerning the avoidance of piecemeal litigation does not favor abstention unless the circumstances enveloping those cases will likely lead to piecemeal litigation that is abnormally excessive or deleterious." *Ambrosia Coal & Constr. Co.*, 368 F.3d at 1333. As discussed above, the Amended Complaint itself shows that

Plaintiffs seek to litigate the same disputes, even pursuing injunctive relief that may compete with injunctive relief that was granted and is currently subject to challenge in the Texas Action. This is not a complaint merely raising similar issues among similar parties, but rather an action raising the same issues, among the same parties, and even flatly acknowledging in the Amended Complaint that the Plaintiffs seek the same relief sought in the Texas Action. By any measure, this is "abnormally excessive or deleterious." *Id.*; *see also O'Dell v. Doychak*, No. 606-CV-677-ORL-19KRS, 2006 WL 4509634, *7 (M.D. Fla. Oct. 20, 2006) (finding that the possibility of state court claim that was further along rendering federal action moot warranted stay and even if the state court action would not moot the issue, a stay would assist court in being able to "render a more accurate decision").

The fourth factor, the order in which the courts obtained jurisdiction, also weighs heavily in favor of abstention. "As the Eleventh Circuit has explained, this factor takes into consideration the extent of progress that has been made in the two actions." *Venezia Resort, LLC v. Favret*, No. 3:07cv74/MCR/EMT, 2007 WL 1364342, at *7 (N.D. Fla. May 8, 2007) (citing *Am. Bankers Ins. Co.*, 891 F.2d at 885). Substantial litigation evident on the face of the docket, including extensive discovery activity, motion practice, hearings, orders, and appeals, have already proceeded on these matters in the Texas Action over the last two years. (*See* Ex. D). Moreover and again, two preliminary orders in the Texas Action are already on

appeal in Texas. This further amplifies the risk of conflicting determinations with the district court in Texas. *See, e.g.*, *Shell v. Schwartz*, No. 07-61261-CIV-DIMITROULEAS, 2008 WL 11422553, at *5 (S.D. Fla. Feb. 5, 2008) (finding that abstention was favored under fourth factor where "the state court proceedings have reached the appeal stages, whereas the instant action has only commenced the discovery phase.").

The fifth factor, whether federal law provides the rule of decision, also favors abstention. Only one of the Plaintiffs' two counts arises under federal law—the Federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1832, *et seq.*—but that claim simply parallels to the state law "Trade Secret Misappropriation" claim raised in the Plaintiffs' Second Amended Petition in the Texas Action. In the Texas Action, Plaintiffs allege misappropriation of their purported trade secrets including:

> . . . land leases, financial modeling, well analysis, production profiles, geological data, business strategies, geophysics, basin knowledge, midstream access and comprehension, market reviews, oil and gas operator knowledge, engineering, commodity pricing, methods of acquisition, title performance, economics, and financial modeling.

(Ex. C ¶61). Identically, Plaintiffs in this case based on their misappropriation claims on:

> . . . land leases, financial modeling, well analysis, production profiles, geological data, business strategies, geophysics, basin knowledge, midstream access and comprehension, market reviews, oil and gas operator knowledge, engineering, commodity pricing, methods of acquisition, title performance, economics, and financial modeling . . . .

(Am. Compl. ¶18, ¶56). The Court should reject the invitation to exercise jurisdiction over a factually identical claim, which Plaintiffs themselves first asserted in Texas, so that it can be adjudicated a second time in federal court under a federal statute.[12]

The second count in the Amended Complaint arises under state common law for tortious interference with contracts, which appears to be essentially the same as the claim in the Texas Action for "Tortious Interference with Existing Business Relations." (Ex. C ¶¶49-53). Although it is not clear at this time which state's law would apply, the allegations in both proceedings make clear that Florida was likely not the epicenter of any alleged interference. This fact cannot be overcome by Plaintiffs' insertion of references to Florida in the Amended Complaint. (*See, e.g.*, Am. Compl. ¶39, ¶41). Again, the fact that Plaintiffs chose Texas to adjudicate these same claims over two years ago against a broader group of defendants suggests that this Court should not exercise jurisdiction here. *See Venezia Resort, LLC*, 2007 WL 1364342, at *7 ("This case does not present complex questions of state law. Nevertheless, the court believes that the dissolution of a Mississippi LLC under

---

[12] Additionally, federal courts have original but not exclusive jurisdiction over DTSA claims. 18 U.S.C. § 1836(c). *See also Beijing Neu Cloud Oriental Sys. Tech. Co., Ltd. v. Int'l Bus. Machs. Corp.*, 110 F.4th 106, 120 (2d Cir. 2024) ("Neu Cloud could have raised its DTSA claim in the prior state-court action. It did not, instead filing two complaints in separate judicial systems to challenge the same conduct committed by the IBM Defendants. As a result, Neu Cloud is barred from bringing its DTSA claim, and we **AFFIRM** the district court's judgment on the alternative basis of *res judicata*.").

Mississippi law is a matter that would be most appropriately resolved by a Mississippi court.").

This logic leads to the same conclusion concerning the sixth factor, the adequacy of the state court to protect the federal Plaintiffs' rights. As this Court has explained, this factor "operates against the surrender of federal jurisdiction only where the state forum may not be adequate to adjudicate the claims." *Id.* at *7. Because the Plaintiffs themselves have selected Texas to pursue these claims, this Court should not presume that Texas would not be adequate to adjudicate them. Moreover, "[b]ecause the DTSA's 'governing rules are borrowed from state law,' state judges arguably have greater expertise in applying the DTSA than federal judges." *Beijing Neu Cloud Oriental Sys. Tech. Co., Ltd.*, 110 F.4th at 117 (quoting *Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 484 (1981)). "It also cannot be said, given the influence of state law on the DTSA, that claims asserted under the statute are 'peculiarly federal.' " *Id.* (quoting *Tafflin v. Levitt*, 493 U.S. 455, 464 (1990)). As such, "[t]he mere fact that DTSA claims are 'labeled federal rather than state law' is insufficient to suggest that state-court judges will be inhospitable to such claims." *Id.* (quoting *Gulf Offshore*, 453 U.S. at 484).

Courts sometimes consider as a separate factor whether "concurrent cases involve a federal statute that evinces a policy favoring abstention." *Gonzalez v. Fed. Nat'l Mortg. Ass'n ("Fannie Mae")*, No. 4:17cv502-WS/CAS, 2018 WL 2709384,

at *5 (N.D. Fla. May 4, 2018) (quoting *Ambrosia Coal & Constr. Co.*, 368 F.3d at 1331), *report and recommendation adopted*, No. 4:17-cv-502-WS/CAS, 2018 WL 2709322 (N.D. Fla. June 5, 2018). This consideration closely tracks the sixth factor described above and, given the concurrent jurisdiction of states over the DTSA and its reliance upon state law, weighs in favor of abstention.

As one further factor, courts have considered the "vexatious or reactive nature of either the federal or the state litigation." *Smith v. Wells Fargo Bank, N.A.*, No. 4:17-cv-240-MW/CAS, 2017 WL 5507858, at *4 (N.D. Fla. Oct. 11, 2017) (quoting *Ambrosia Coal & Constr. Co.*, 368 F.3d at 1331), *report and recommendation adopted*, No. 4:17-cv-240-MW/CAS, 2017 WL 5320003 (N.D. Fla. Nov. 13, 2017). In light of the Amended Complaint's alleged concerns regarding pending arguments to dissolve the temporary injunction in the Texas Action (Am. Compl. ¶39), and the fact that Plaintiffs here are simultaneously defending an appeal of the temporary injunction in Texas (*see* Ex. E), the timing of this Amended Complaint asking for injunctive relief is clearly reactive to developments in the Texas Action. *See Smith*, 2017 WL 5507858 at *4 (finding that "the timing of this case reveals it is reactive . . . [where it] was initiated on May 26, 2017 . . . [and] [j]udicial notice is taken of the state court docket which reveals Wells Fargo had filed its motion for summary judgment on February 7, 2017. . . . Faced with the arguments raised by Wells Fargo, Mr. Smith chose to file this lawsuit . . . [and] is using this lawsuit to seek 'a

permanent or final injunction enjoining Defendant's agents and employees . . . from engaging in any eviction or foreclosure activity with respect to the Subject Property.' ").

Finally, numerous defendants in the Texas Action have challenged that court's personal jurisdiction, and Compton does not concede that the court in the Texas Action would have personal jurisdiction over him. But that is immaterial here. Although Plaintiffs have not served Compton in Texas, they have (i) asserted that the court in Texas has jurisdiction over FourSite, the entity which Compton operated; (ii) asserted that the Texas court is the proper forum for their claims against FourSite; and (iii) continue to maintain that position. Surely the Plaintiffs are not arguing that the jurisdictional grounds they believe sufficient to bring claims against FourSite and many other defendants (several of whom are, similarly to Compton, not party to a related contract with a forum selection clause) in Texas are insufficient to bring the same claims, based on their allegations, against Compton, whom they themselves also named as a defendant in Texas. In any event, the question of whether jurisdiction is proper in the Texas Action should be decided there, not in federal court in Florida.

## CONCLUSION

For the foregoing reasons, Compton respectfully moves the Court for an order dismissing this action with prejudice, or in the alternative, staying this action

pending resolution of the previously filed state court proceeding, and for such other and further relief to which Compton may be justly entitled.

## CERTIFICATION OF WORD COUNT

Pursuant to Rule 7.1(F), N.D. Fla. Loc. R., undersigned counsel certifies that the motion and incorporated memorandum of law above contains 6,364 words.

## NOTICE OF INTENT TO SEEK ATTORNEYS' FEES AND COSTS

Defendant hereby provides notice that he will seek recovery of his attorneys' fees and costs under all applicable grounds.

Respectfully submitted this 2nd day of July, 2026.

**HOLLAND & KNIGHT LLP**

*/s/ Kevin W. Cox*
**Kevin W. Cox**
Florida Bar No. 34020
kevin.cox@hklaw.com
Secondary: tessa.pullen@hklaw.com
315 South Calhoun Street, Suite 600
Tallahassee, FL 32301
Telephone: (850) 224-7000
Facsimile: (850) 224-8832

*Attorney for Defendant Bruce Compton*