**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF FLORIDA**
**(PENSACOLA DIVISION)**

**ECKARD LAND & ACQUISITION, L.L.C.,**
**and**
**ECKARD EXPLORATION &**
**PRODUCTION, L.L.C.**

**Case No: 3:26-cv-03829-MCR-ZCB**

**Plaintiffs,**

**v.**

**BRUCE COMPTON,**

**Defendant.**
__________________________________/

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Plaintiffs, Eckard Land & Acquisition, LLC and Eckard Exploration & Production, LLC (collectively "Eckard Land" or "Plaintiffs"), by and through their undersigned counsel, file this memorandum in opposition to Defendant's Motion to Dismiss First Amended Complaint ("Motion").

## INTRODUCTION

Compton ("Compton" or "Defendant") asks this Court to dismiss or stay Plaintiffs' lawsuit on two grounds. First, he contends that because Plaintiffs' earlier

Texas state-court lawsuit against different defendants (the "Texas Action"[1]) remains pending, this action constitutes impermissible claim splitting. Second, he requests this Court stay this proceeding under the *Colorado River* abstention doctrine. Neither argument has merit. The federal claim-splitting doctrine is not well suited to this state-federal procedural posture presented here, and likely does not even apply, nor does it warrant dismissal. Likewise, this case does not present exceptional circumstances warranting abstention under *Colorado River*.

## CLAIMS SPLITTING

Compton's claim-splitting argument fails for four reasons, each of which warrants denial. First, the weight of persuasive authority holds that the federal claim-splitting doctrine does not apply where the concurrent action is pending in state court. If *any* claim-splitting analysis is appropriate, Texas law supplies the governing framework, not federal law. Second, even assuming the federal doctrine applies, dismissal is improper because the Texas court lacked personal jurisdiction over Compton and therefore could not have afforded Plaintiffs complete relief. Third, Compton was neither a party—nor in privity with any party—to the Texas Action.

[1] For purposes herein, the "Texas Action" shall mean the action the Plaintiffs filed in the District Court of the 471st Judicial District, in Collin County, Texas styled *Eckard Land & Acquisition, L.L.C. and Eckard Exploration & Production, L.L.C v. Darcy Harbott, et. al.* Case No: 471-03419-2024.

Finally, party status and privity present factual questions that cannot be resolved at this juncture. Each ground requires denial of Compton's Motion.

## I. The Weight of Authority Demonstrates That the Federal Claim-Splitting Doctrine Does Not Apply to a Pending State-Court Action; Alternatively, Texas Law Provides the Governing Framework.

Relying primarily on *Vanover v. NCO Financial Services, Inc.*, 857 F.3d 833 (11th Cir. 2017), Compton assumes the federal claim-splitting doctrine applies. No controlling authority supports that premise. *Vanover* itself involved two federal actions, not a pending state court action followed by a federal action.

District courts within this Circuit have noted *Vanover's*—and the federal doctrine's—limitations. In *Lottery.com, Inc. v. Brier*, No. 8:23-cv-2594-KKM-TGW, 2024 WL 4905483, at *4-6 (M.D. Fla. June 11, 2024), the court carefully surveyed the authorities, recognized the absence of binding Eleventh Circuit precedent, and declined to extend either the federal or state claim-splitting doctrine to concurrent state-federal litigation. *Accord Rayonier Performance Fibers, LLC v. City of Fernandina Beach*, No. 3:25-cv-343-PDB, 2025 WL 4054509, at *4 (M.D. Fla. Sept. 2, 2025) ("The rule against splitting claims applies when both actions are in federal court, not when one action is in federal court and one action is in state court."); *Pollitz v. Halifax Health*, No. 6:15-cv-450-Orl-37KRS, 2015 WL 4987732, at *2 n.4 (M.D. Fla. Aug. 19, 2015) (noting federal claim-splitting doctrine permits dismissal only where another action is pending in federal court); *Vernon v. Ziel*, No.

20-60986-CIV, 2020 WL 4501802, at *2-3 (S.D. Fla. June 15, 2020) (noting the federal rule did not apply because the earlier case was pending in state court, and applying Florida claim-splitting law); *Collier HMA Physician Mgmt., LLC v. NCH Healthcare Sys., Inc.*, No. 2:18-cv-408-SPC-MRM, 2019 WL 277733, at *4, n.4 (M.D. Fla. Jan. 22, 2019) (same).[2]

While not binding, *Bowman v. Coddington*, 517 F. App'x 683, 685 (11th Cir. 2013), is informative. *Bowman* did not address the threshold inquiry presented here—whether the federal claim-splitting doctrine applies when the first-filed action remains pending in state court—but its application of Florida's claim-splitting doctrine, where the state action remained pending, strongly suggests that the federal claims-splitting doctrine is not to be employed beyond the federal-to-federal context.

Accordingly, although the Eleventh Circuit has not squarely resolved the issue, the persuasive authority—including *Bowman*—points in one direction: the federal claim-splitting doctrine does not govern where the first-filed action remains pending in state court.[3] Either no claim-splitting doctrine applies, or the claim-splitting law of the pending state forum—here, Texas—applies. Under either

[2] To be sure, some district courts have unpersuasively applied *Vanover* beyond its mandate. *See, e.g.*, *Mohamad v. HSBC Bank N.A.*, No. 6:16-cv-2239-Orl-41DCI, 2018 WL 8576597 (M.D. Fla. Mar. 27, 2018).

[3] The undersigned's research has uncovered no Eleventh Circuit decision holding that the federal claim-splitting doctrine applies to pending state-court litigation.

framework, Compton's Motion fails.

The cases Compton cites likewise do not address whether the federal claims-splitting doctrine applies where the concurrent pending litigation is in state court. With the exception of *Santo v. Aerostar Training Services, LLC*, 2024 WL 6984159 (M.D. Fla. Oct. 8, 2024)[4] and *Martinez v. Market Traders Institute, Inc.*, 757 F. App'x 815 (11th Cir. 2018),[5] every case Compton cites in Section I.B. involved two federal actions, not concurrent state-and-federal proceedings. *Kennedy*, *Rodemaker*, *National Association for the Advancement of Colored People*, and *Flanagan* all arose from parallel federal litigation.[6]

## II. Even if the Federal Claims Splitting Doctrine Applied, Dismissal is Inappropriate Due to a Lack of Jurisdiction.

Even if the federal claim-splitting doctrine applies, Compton's Motion still fails because the Texas court never possessed personal jurisdiction over Compton, and Compton does not contend otherwise. *See*, ECF No. 16 at 24. Claim-splitting

[4] Compton cites *Santo* only for its discussion of privity. Although *Santo* involved a pending state action and a later-filed federal action, the court never considered whether federal or state claim-splitting principles governed.

[5] Compton likewise relies on *Martinez*'s privity analysis. ECF No. 16 at 13-14. Notably, *Martinez* applied Florida law, not the federal doctrine, to determine whether to give preclusive effect to a state court judgment. *Id*. at 817.

[6] Although the nature of the concurrent case was not specified in *Flanagan v. Miami Jewish Health Sys., Inc.*, No. 4:17-cv-507-RH/CAS, 2018 WL 11506054 (N.D. Fla. May 15, 2018), the docket in that case reveals the other case was another pending federal action. *See Flanagan*, No. 4:17-cv-507-RH/CAS, ECF No. 6 at 2 (indicating the other, first-filed case was *Rodriguez v. Molina Healthcare of Florida, Inc.*, 2017 WL 10841484 (N.D. Fla. May 24, 2017)).

does not bar a subsequent action where—as here—the first forum lacked jurisdiction over a defendant and therefore cannot afford complete relief.

The Eleventh Circuit has repeatedly recognized that claim splitting does not apply if the earlier court lacked jurisdiction to resolve all plaintiff's claims. In *Aquatherm Industries, Inc. v. Florida Power & Light*, 84 F.3d 1388, 1392 (11th Cir. 1996), the court held that "the general rule against splitting causes of action does not apply when suit is brought in a court that does not have jurisdiction over all of a plaintiff's claims." The court reaffirmed that principle in *Borrero v. United Healthcare of New York, Inc.*, 610 F.3d 1296, 1307 (11th Cir. 2010).

Although *Aquatherm* and *Borrero* involved subject-matter jurisdiction, their reasoning applies equally to personal jurisdiction: claim splitting cannot compel a plaintiff to litigate in a court that lacks authority to adjudicate the claims. *Rumbough v. Comenity Capital Bank*, 748 F. App'x 253, 256 (11th Cir. 2018) confirms this. (holding that because the defendant was not served the first court "never had jurisdiction" and "[a]bsent jurisdiction, our claim-splitting rule does not preclude" the second suit).

The same principle controls here.

Unlike the other individual defendants in the Texas Action, Compton was not subject to personal jurisdiction in Texas. Compton does not contend otherwise. ECF No. 16 at 24. Compton was not among the defendants whose alleged contacts formed

the basis for Texas jurisdiction.

Compton's argument that Plaintiffs should sue him in Texas and litigate the jurisdiction there ignores counsel's obligation to conduct a reasonable jurisdictional inquiry before filing suit. Compton would have Plaintiffs sue a defendant in a forum they reasonably believed lacked personal jurisdiction simply to obtain a jurisdictional ruling confirming the same before proceeding in a forum that unquestionably possessed jurisdiction. Neither federal law nor Texas law requires such a futile—and potentially sanctionable—exercise. Texas law prohibits attorneys from asserting claims without a reasonable basis in law and fact. *See* Tex. Disciplinary R. Prof'l Conduct 3.01; Tex. R. Civ. P. 13; Tex. Civ. Prac. & Rem. Code § 10.001. Texas courts have recognized that pursuing claims despite the absence of a reasonable jurisdictional basis may warrant sanctions. *See Corea v. Bilek*, 362 S.W.3d 820, 826-29 (Tex. App.—Amarillo 2012); *Valdez v. Kreso, Inc.*, 144 F. Supp. 2d 663, 666-68 (N.D. Tex. 2001).

Compton suggests Plaintiffs could have established personal jurisdiction over him because they established jurisdiction over FourSite. ECF No. 16 at 24. Not so. While FourSite and other defendants are challenging personal jurisdiction in Texas, (*See* ECF No. 16 at 24; Ex. 1, FourSite's Special Appearance)[7] jurisdiction over

[7]This Court can consider this Ex.1 for the reasons Compton articulated. ECF No. 16, n.1 & 5.

FourSite is based on the conduct of the "Individual Defendants" identified there—Hinkle and Harbott—not Compton. (*See* ECF No. 16 at 24; Ex. 2, Plaintiffs' trial brief in opposition to FourSite's jurisdictional challenge ("Brief") at 9-10.)[8]

In sum, the Texas court lacks personal jurisdiction over Compton and cannot afford complete relief. Therefore, under *Aquatherm*, *Borrero*, and *Rumbough*, the claim-splitting doctrine does not bar this action.

## III. Even if a Claim-Splitting Doctrine Applies, the Elements are not Established

### a. *Texas Law Determines Party Status by the Substance of the Pleading, Not Labels or Docket Entries.*

Compton is not a party to the Texas Action. Under Texas law, party status turns on the substance of the operative pleading—not the caption, style, docket entries, or other clerical labels. The proper classification of parties "is a legal question determined primarily by reviewing the pleadings." *Rhey v. Redic*, 408 S.W.3d 440, 463 (Tex. App.—El Paso 2013). "The petition as a whole must be considered in determining who is being sued." *Cox v. Union Oil Co. of Cal.*, 917 S.W.2d 524, 526 (Tex. App.—Beaumont 1996). Likewise, "[t]he legal effect of a pleading . . . is not determined by its style or name, but by its contentions and purpose." *Krishnam v. Ramirez*, 42 S.W.3d 205, 224 (Tex. App.—Corpus Christi 2001, pet. denied). The question, therefore, is whether the petition identifies

[8] *See* n.7, *supra*

Compton as a defendant, asserts claims against him, and seeks relief from him. It does not.

Although Compton's name appears once in the introductory paragraph and once in paragraph 33, the Second Amended Petition ("SAP") never identifies him as a defendant against whom relief is sought, asserts a cause of action against him, alleges liability on his part, or requests any relief from him. ECF No. 16-3.

FourSite's counsel acknowledged that Compton was "not a defendant," but "a bystander" who was "not a party to this at all." ECF No. 13 at ¶34. Compton's inclusion was inadvertent and since corrected by the Third Amended Petition. *Compare* ECF No. 16-3 at 1 *with* **Ex. 3** at 1; *accord ECF No. 13 at* ¶29. Tellingly, Compton was never served in the Texas Action.

By contrast, the SAP repeatedly identifies the actual defendants, including FourSite, describes their alleged misconduct and asserts claims against them. Both the trade-secret count and the tortious-interference count expressly identify the defendants alleged to have misappropriated and interfered. ECF No. 16-3 at ¶¶20-37, 55-58, 61-62. Compton is absent from those allegations, save a passing reference in paragraph 33.

Because the claims are not asserted against Compton nor is relief sought from him, he is not a party to the Texas Action.

**b. *Compton Was Not in Privity with FourSite or Its Other Member Defendants in the Texas Action.***

Even assuming a claim-splitting doctrine applies where the concurrent action is pending in state court (which no binding Eleventh Circuit precedent establishes, *see* Section I, *supra*), the identity-of-parties requirement is not met.

Texas law—not the federal law cited by Compton—governs this analysis because the concurrent action is pending in Texas state court, *see* Section I, *supra*.

Privity is governed by the framework established by the Texas Supreme Court in *Getty Oil Co. v. Insurance Co. of North America*, 845 S.W.2d 794 (Tex. 1992), and *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644 (Tex. 1996). Those decisions generally recognize three non-exclusive circumstances in which a nonparty may be deemed in privity with a party to prior litigation: (1) the nonparty controlled the prior action; (2) the nonparty's interests were represented by a party to the prior action; or (3) the nonparty is a successor in interest deriving its rights through a party to the prior action. *Amstadt*, 919 S.W.2d at 653; *accord Getty Oil*, 845 S.W.2d at 800-01.

Outside those recognized circumstances, "there is no general definition of privity." *Getty Oil*, 845 S.W.2d at 800. Nor is privity established merely because persons "may happen to be interested in the same question or in proving the same state of facts." *McNeil Interests, Inc. v. Quisenberry*, 407 S.W.3d 381, 388 (Tex. App.—Houston (14th Dist.) 2013) (quoting *Benson v. Wanda Petroleum Co.*, 468 S.W.2d 361, 363 (Tex. 1971)).

Compton satisfies none of the three recognized categories.

First, there is no evidence that Compton controlled the Texas Action. Control requires that a nonparty "actively and openly participated" in the prior litigation such that he possessed the right to direct it. *Maxson v. Travis Cnty. Rent Account*, 21 S.W.3d 311, 316-17 (Tex. App.—Austin 1999) (superseded by statute on other grounds). Compton identifies no evidence that he selected counsel, directed litigation strategy, financed the defense, or otherwise controlled the Texas defendants' defense.

Second, the record contains no evidence that FourSite, Harbott, or Finkle represented Compton's individual legal interests in the Texas Action. Moreover, those defendants are defending claims based on allegations of their own misconduct and distinct legal duties.

Third, Compton plainly is not a successor in interest to any party in the Texas Action.

Unable to satisfy any recognized basis for privity under Texas law, Compton instead relies on his thirty-percent ownership interest in FourSite, his operational role, and the allegation that he acted in concert with FourSite, Harbott, and Finkle. ECF No. 16 at 10-13. Texas law forecloses those theories.

In *McNeil Interests*, the Texas Court of Appeals rejected the argument that even a fifty-percent owner of an LLC was in privity with the LLC for res judicata purposes, explaining that the Texas Supreme Court has never recognized automatic

privity between an entity and its owners. 407 S.W.3d at 389-92. The court further held that actions taken on behalf of the LLC occur in a representative capacity and do not establish that an individual owner controlled the litigation in his personal capacity. *Id.* Likewise, in *Matter of 3 Star Properties, L.L.C.*, the Fifth Circuit, applying Texas law, rejected the argument that common control or participation in an alleged fraudulent scheme created privity, as required under *Amstadt*. 6 F.4th 595, 606-607 (5th Cir. 2021). Texas courts have similarly declined to hold that alleged co-conspirators or joint tortfeasors are automatically in privity. *See New York Pizzeria, Inc. v. Syal*, 53 F. Supp. 3d 962, 967-71 (S.D. Tex. 2014).

Compton's reliance on a "pre-existing substantive legal relationship," ECF No. 16 at 12-13, likewise provides no basis for privity. That phrase derives from *Taylor v. Sturgell*, 553 U.S. 880 (2008), where the Supreme Court explained that a "pre-existing substantive legal relationship" sufficient to warrant nonparty preclusion is "sometimes collectively referred to as 'privity.'" *Id.* at 894 n.8. Thus, *Taylor* does not create a separate category of privity; it merely describes recognized circumstances in which preclusion principles apply.

Although the Supreme Court did not define every qualifying legal relationship, the examples it provided—arising "as much from the needs of property law as from the values of preclusion by judgment"—are instructive and inapposite of Compton's relationship with FourSite: "preceding and succeeding owners of

property, bailee and bailor, and assignee and assignor." *Id.* at 894. At bottom *Taylor* held a "nonparty is bound by a judgment if she 'assume[d] control' over the litigation in which that judgment was rendered. Because such a person has had 'the opportunity to present proofs and argument,' he has already 'had his day in court' even though he was not a formal party to the litigation." *Griswold v. Cnty. of Hillsborough*, 598 F.3d 1289, 1293 (11th Cir. 2010). That is not this case.

In any event, *Taylor* does not alter Texas's governing privity framework.[9] The Texas Supreme Court has never adopted the "substantive legal relationship" as an independent test. The only Texas appellate decision addressing the phrase, *Lee v. Rogers Agency*, 517 S.W.3d 137 (Tex. App.—Texarkana 2016), treated the inquiry as whether the nonparty was adequately represented such that he had notice and an

[9] While Texas law governs this inquiry, Compton's citation to binding Eleventh Circuit precedent does not mandate a different outcome. *Rodemaker v. City of Valdosta Bd. of Educ.*, 110 F.4th 1318, 1328 (11th Cir. 2024) ("When one party's actions are *legally* another party's actions, those two parties have the kind of substantive legal relationship that establishes privity."). That has not been established on this record. For example, Compton has not established that in all circumstances he would be personally liable for all the actions taken by FourSite, nor that FourSite would automatically be liable for all the actions Compton took—e.g., tortiously interfering with Plaintiffs' contracts with the Eckard Investors and misappropriating and misusing Plaintiffs' protected information.

Compton's reliance on *Martinez, supra*, is misplaced. First, Martinez applies Florida law, not Texas law. *Martinez*, 757 Fed. App'x at 817. Second, *Martinez* is only persuasive authority and the abbreviated analysis that the "flexible legal term" was satisfied lacks persuasion. *See McNamara v. Gov't Emps. Ins. Co.*, 30 F.4th 1055, 1060 (11th Cir. 2022) (reiterating "an elemental point" that unpublished opinions "are not considered binding precedent"). Third, as the basis for finding privity, the Court seemingly relied on the apparent absence of any argument that the interests ofthe individuals and the companies were divergent. *Id.* Unlike *Martnez*, the interests of FourSite and Compton are not coterminous. *See e.g.* Ex. 2 (Brief), pgs. 9-10, (tying FourSite's misconduct in certain respects to the "Individual Defendants" in the Texas Action – Harbott and Finkle).

opportunity to be heard. *Id.* at 156-57. *Lee* did not replace the framework established by *Getty Oil* and *Amstadt*.[10] Moreover, this Court looks to Texas Supreme Court for questions of Texas law. *Packard v. OCA, Inc.*, 624 F.3d 726, 729 (5th Cir. 2010).

Indeed, the overwhelming weight of Texas authority—including *McNeil Interests*, 407 S.W.3d at 388-391, *Hill v. Tx-An Anesthesia Management, LLP*, 443 S.W.3d 416, 424-25 (Tex. App.—Dallas 2014), and *Better Business Bureau of Metropolitan Houston, Inc. v. John Moore Services, Inc.*, 500 S.W.3d 26, 41 (Tex. App.—Houston (1st Dist.) 2016)—continues to apply the *Getty Oil/Amstadt* framework without relying on *Taylor*.

At bottom, Compton has shown only that he owned a minority interest in FourSite, participated in its operations, and allegedly acted with FourSite, Harbott, and Finkle. Because Compton has not shown that he controlled the Texas Action, was represented by a party to that action, or succeeded any party's legal interests, he cannot satisfy the identity-of-parties requirement. His claim-splitting defense fails as a matter of Texas law.

Finally, in the parenthetical quoting *Rodemaker*, Compton implicitly suggests that this Court dismiss Plaintiffs' claims because his relationship with FourSite is allegedly close enough that "a judgment . . . against the party should bind" him. ECF

[10] In any event, even under *Lee*, the record identifies no substantive legal relationship between Compton and any defendant in the Texas Action coming within the contours of *Taylor*.

No. 16 at 13. Plaintiffs disagree that federal claim-splitting principles require dismissal for the reasons stated in Sections I, II, and III. If this Court nevertheless applies federal law and dismisses based on privity, Plaintiffs request that this Court make the necessary implication explicit: FourSite is bound by Compton's actions, and Compton is bound by FourSite's actions and personally liable for any judgment against FourSite in the Texas Action.

Finally, regarding the common nucleus of operative facts, the two actions are distinct for the same reasons they do not raise substantially the same issues under the *Colorado River* analysis. *See* Section VII.(a).

## IV. Privity Should not be Decided on this Record.

As set forth above, Compton is not a party to the Texas Action (Section III.A.), nor is he in privity with any Texas defendant (Section III.B.). Even if this Court reaches the privity issue, however, it should decline to resolve that fact-intensive inquiry on a Rule 12(b)(6) motion.

The Eleventh Circuit permits a district court to consider a claim-splitting defense at the pleading stage where the defense appears on the face of the complaint and the court possesses all judicially noticeable facts necessary to resolve it. *Vanover v. NCO Fin. Servs., Inc.*, 857 F.3d 833, 836 n.1 (11th Cir. 2017). *Vanover* does not authorize dismissal where the facts necessary to establish the defense remain disputed or undeveloped.

Here, the pleadings and judicially noticeable materials do not conclusively establish privity.

A particularly instructive decision is *Tim Minn, Inc. v. Tim Hortons USA Inc.*, No. 20-23481-CIV, 2021 WL 4482733 (S.D. Fla. Aug. 2, 2021), report and recommendation adopted, 2021 WL 4480281 (S.D. Fla. Sept. 30, 2021). There, as here, the defendant sought dismissal by arguing that affiliated business entities were in privity. *Id.* at *4. Although the complaint alleged a corporate relationship, the court held that the pleadings did not resolve the factual questions necessary to determine whether the relationship was sufficiently close to support preclusion. *Id.* at *6-7. Instead, the court explained:

> (t)hese unanswered questions are why courts prefer to determine privity on a motion for summary judgment - rather than on a motion to dismiss - because the former has the benefit of a complete factual record whereas the latter must include enough factual details that make it plainly clear that privity is lacking. Motions to dismiss, based on a lack of privity, are therefore often deemed premature given the fact-intensive exercise required.

*Id.* at *6.

That is precisely the circumstance here. Compton asks this Court to infer privity based on his minority ownership interest in FourSite, his operational role, and his relationship with the Texas defendants. But those facts do not establish privity as a matter of law; they merely identify factual issues requiring further development. Whether Compton controlled FourSite's participation in the Texas

Action, whether FourSite adequately represented his interests, whether Compton directed or participated in that litigation, and whether the relationship between Compton and the Texas defendants satisfies the governing privity standard are precisely the type of fact-intensive inquiries that ordinarily should be resolved after discovery on a developed record. *Id.* at **6-7.* ("it is highly doubtful that the Eleventh Circuit would take a more charitable view" of a privity determination made on a Rule 12(b)(6) motion without any evidentiary record").

Eleventh Circuit precedent reinforces this conclusion. In *Hart v. Yamaha-Parts Distributors, Inc.*, 787 F.2d 1468 (11th Cir. 1986), the court reversed a district court's privity finding because the record lacked sufficient evidence concerning ownership, operational control, and the relationship between affiliated corporations. *Id.* at 1473. Likewise, in *CSX Transportation, Inc. v. General Mills, Inc.*, 846 F.3d 1333, 1340 (11th Cir. 2017), the court reiterated the factual nature of the privity inquiry: "[w]hether parties were in privity is a factual question that should be decided in the first instance by the district court."

Compton attempts to avoid this authority by relying on judicially noticeable materials from the Texas Action. But judicial notice does not eliminate the need for factual development in a privity analysis. As Compton himself acknowledges, judicial notice establishes only what documents contain—not the truth of the matters asserted in those documents. ECF No. 16 at n.1. Thus, courts routinely distinguish

between taking judicial notice of prior pleadings and determining what those pleadings establish for purposes of privity.

*Sinai Holdings, LLC v. JPMorgan Chase Bank, N.A.*, No. 0:23-cv-62159-WPD, 2024 WL 6992743 (S.D. Fla. April 29, 2024) is instructive. There, the court reviewed the pleadings and judicially noticed documents but nevertheless denied a Rule 12(b)(6) motion, finding that "(b)ecause the existence of privity is not apparent from the face of the Complaint [and judicially noticed documents] and should be made on a more complete factual record, the Court declines to dismiss this action based on claim preclusion or issue preclusion." *Id.* at *4. The court observed that "determining privity requires an inquiry which 'is hardly the factual analysis that motions to dismiss are designed to do.'" *Id.* (quoting *Tim Minn*, 2021 WL 4482733, at *7).

The same is true here. Even if this Court considers the Texas pleadings, docket, hearing transcript, and other judicially noticeable materials submitted by Compton, those materials do not conclusively resolve the disputed facts; they merely identify the factual questions that remain. Compton relies principally on his 30% ownership interest in FourSite and his operational role within the company. Those facts, however, do not themselves establish privity. Rather, they raise the very factual inquiries discussed above—such as the extent of Compton's control, whether his interests were adequately represented in the Texas Action, whether he

participated in or directed that litigation, and whether his relationship with the Texas defendants satisfies the governing standard for privity.

Those factual determinations cannot be resolved from the pleadings and judicially noticeable materials alone. Plaintiffs' allegations underscore why discovery is necessary. The First Amended Complaint alleges that Compton was never served, never appeared, never answered, and never became a party to the Texas Action. ECF No. 13 at ¶¶27, 30-31. It further alleges that FourSite's own counsel represented to the Texas court that Compton was "not a party" to that litigation. ECF No. 13 at ¶34. Plaintiffs also allege that Compton is merely a 30% owner of FourSite, is not alleged to be its alter ego, and is not alleged to have controlled FourSite's defense or directed the Texas Action. ECF No. 13 at ¶35.

Compton disputes the significance of those allegations, but that dispute confirms why dismissal is premature. His motion asks this Court to draw factual inferences in his favor regarding control, alignment of interests, and representation—the very issues discovery is intended to resolve. As explained in the well-reasoned decisions of *Tim Minn* and *Sinai Holdings*, although Rule 12(b)(6) *may* permit early resolution where the relevant facts are undisputed, courts generally decline to decide privity where, as here, the inquiry depends on disputed factual relationships and competing inferences drawn from judicially noticeable materials.

Accordingly, even if a claim-splitting defense is available where the concurrent litigation is pending in state court, Compton's motion should nevertheless be denied because the record at the motion-to-dismiss stage does not conclusively establish the privity element.

## ***Colorado River***

This case does not present the extraordinary and narrow circumstances required for abstention under the *Colorado River* doctrine.

Compton misframes the *Colorado River* inquiry and disregards clear directives from the Supreme Court and Eleventh Circuit. Binding precedent emphasizes the "virtually unflagging obligation" of federal courts to exercise the jurisdiction conferred upon them by Congress. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). The question is not whether there is some reason to exercise federal jurisdiction; rather, the presumption is that jurisdiction must be exercised unless the case presents the "clearest of justifications" and "exceptional circumstances" warranting its surrender. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25–26 (1983) (superseded by statute on other grounds). The Eleventh Circuit has repeatedly emphasized that the analysis is undertaken with a "heavy bias favoring the federal courts' obligation to exercise the jurisdiction that Congress has given them." *Jackson-Platts v. General Elec. Capital Corp.*, 727 F.3d 1127, 1141 (11th Cir. 2013).

Compton fails to acknowledge these fundamental principles governing this Court's analysis, much less demonstrate the extraordinary circumstances necessary to justify abstention.

**V. The Doctrine.**

When a federal court possesses jurisdiction, "the pendency of an action in the state court is no bar to proceedings concerning the same matter in federal court." *Jackson-Platts*, 727 F.3d at 1140. This rule reflects the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Colorado River*, 424 U.S. at 817. The Supreme Court has explained, and the Eleventh Circuit has "repeatedly cautioned," that "abstention is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Jackson-Platts*, 727 F.3d at 1140. "Abstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River*, 424 U.S. at 813.

*Colorado River* abstention is particularly limited, applying "in fewer circumstances than are the other abstention doctrines." *Jackson-Platts*, 727 F.3d at 1140. It is reserved for the rare case where exceptional circumstances justify the federal court's surrender of jurisdiction. *See Colorado River*, 424 U.S. at 813, 817-19.

**VI. The Legal Standard.**

"As a threshold matter," *Colorado River* abstention requires a parallel state proceeding involving "substantially the same parties and substantially the same

issues." *Jackson-Platts*, 727 F.3d at 1140. Even if that threshold requirement is satisfied, abstention remains improper absent "exceptional circumstances." *Id.* at 1141. In determining whether exceptional circumstances exist, courts consider six factors:

> (1) the order in which the courts assumed jurisdiction over property; (2) the relative inconvenience of the fora; (3) the order in which jurisdiction was obtained and the relative progress of the two actions; (4) the desire to avoid piecemeal litigation; (5) whether federal law provides the rule of decision; and (6) whether the state court will adequately protect the rights of all parties.

*Jackson-Platts*, 727 F.3d at 1141.

Courts may also consider "the vexatious or reactive nature of either the federal or state litigation," *Taveras v. Bank of Am., N.A.*, 89 F.4th 1279, 1286 (11th Cir. 2024), and whether the concurrent proceedings involve a federal statute reflecting a policy favoring abstention. *Ambrosia Coal & Constr. Co. v. Pages Morales*, 368 F.3d 1320, 1331 (11th Cir. 2004).

These factors are not a "mechanical checklist." *Ambrosia Coal*, 368 F.3d at 1332. Rather, the inquiry must be "heavily weighted in favor of the exercise of jurisdiction." *Id.* (quoting *Moses H. Cone*, 460 U.S. at 16). No single factor is determinative, and the weight assigned to each factor varies depending on the circumstances. *Id.*

Binding precedent repeatedly instructs that courts must conduct this analysis "with a heavy bias favoring the federal courts' obligation to exercise the jurisdiction that Congress has given them." *Jackson-Platts*, 727 F.3d at 1141; *accord Moses H. Cone*, 460 U.S. at 16; *First Franklin Fin. Corp. v. McCollum*, 144 F.3d 1362, 1364 (11th Cir. 1998); *Am. Bankers Ins. Co. of Fla. v. First State Ins. Co.*, 891 F.2d 882, 884 (11th Cir. 1990).

As the Eleventh Circuit explained, the Supreme Court has "emphasized" that this Court's "task in cases such as this is not to find some substantial reason for the *exercise* of federal jurisdiction by the federal court; rather, the task is to ascertain whether there exist exceptional circumstances, the clearest of justifications, ... to justify the surrender of jurisdiction." *Am. Bankers*, 891 F.2d at 886 (quotations omitted).

## VII. Analysis.

### *a. There Are No Parallel Proceedings.*

The Texas Action and this proceeding are not parallel because they do not involve substantially the same parties or substantially the same issues.

Most importantly, Compton is not a party to the Texas Action. He was never named in the style of any petition, and the pleadings contain no substantive allegations against him. ECF No. 13 at ¶¶27, 30. He was never served, never appeared, and no citation, answer, or responsive pleading exists on his behalf. ECF

No. 13, ¶¶30–31. Indeed, counsel for FourSite expressly represented to the Texas court that Compton "is not a party to this at all, not a defendant in this case . . . ." ECF No. 13 at ¶34.

The reason is straightforward: there is no good-faith basis to conclude that the Texas court has personal jurisdiction over Compton. Compton does not dispute this. Instead, he expressly declines to concede that the Texas court could exercise jurisdiction over him. ECF No. 16 at 24.

Despite the importance of this issue, Compton devotes only a single sentence to establishing that parallel proceedings exist. ECF No. 16 at 15–16. Rather than identify supporting authority or explain why the proceedings satisfy *Colorado River*'s demanding threshold requirement, he merely refers generally to "reasons discussed above" and "records attached." *Id.* His abbreviated argument fails to address the fundamental problem: the Texas Action cannot resolve Plaintiffs' claims against him.

Although Compton relies heavily on privity in support of his claim-splitting argument, it is unclear whether his limited argument regarding parallel proceedings also depends on privity. What is clear is that he cites no *Colorado River* authority finding substantially similar parties based on privity. The Eleventh Circuit has cautioned against expanding the concept of substantially similar parties through such reasoning. In *Acosta v. James A. Gustino, P.A.*, the court rejected the argument that

an agency relationship was sufficient to establish substantially similar parties, explaining that such an expansive interpretation "could capture a variety of different entities and individuals and label them as 'substantially similar parties.'" 478 F. App'x 620, 622 (11th Cir. 2012). The court was "especially hesitant" to adopt such an approach "in the context of a narrow abstention doctrine." *Id.* (emphasis added). This Court should likewise decline to do so here.

Compton's only cited authority for parallel proceedings is *Ambrosia*. Although *Ambrosia* recognizes that identical parties are not required, it does not eliminate the requirement that the state proceeding provide an adequate vehicle for resolution of the dispute. As the Supreme Court explained, *Colorado River* abstention presumes that "the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties." *Moses H. Cone*, 460 U.S. at 28. Indeed, "the decision to invoke *Colorado River* necessarily contemplates that the federal court will have nothing further to do in resolving any substantive part of the case." *Id; accord Sini v. Citibank, N.A.*, 990 F. Supp. 2d 1370, 1376 (S.D. Fla. 2014) (describing this as the "crucial question" in the parallel analysis).

That cannot occur here. Compton is not, and cannot become, a party to the Texas Action because the Texas court lacks personal jurisdiction over him. The Texas Action therefore cannot resolve Plaintiffs' claims against Compton and cannot

provide complete relief. Abstention would effectively leave Compton free from any proceeding concerning the claims asserted against him. That result is inconsistent with *Colorado River*. *See DDR Constr. Servs., Inc. v. Siemens Indus., Inc.*, 770 F. Supp. 2d 627, 645 (S.D.N.Y. 2011) ("Though abstention does not require that the parties in the relevant suits be identical, when dismissal of the federal proceeding would leave a defendant free from any proceeding on issues in question, abstention is unwarranted.").

Compton cannot simultaneously argue that the Texas court lacks jurisdiction over him while asking this Court to surrender jurisdiction in favor of that same proceeding. He cannot "have [his] cake and eat it too." *Azurin v. Bio-Med. Applications of California, Inc.*, No. 23-CV-11585-AK, 2024 WL 1258824, at *4 (D. Mass. Mar. 25, 2024).

Nor do the proceedings involve substantially the same issues. Plaintiffs' claims against Compton depend on whether he engaged in unjustified interference with Plaintiffs' contractual relationships, including those with the Eckard Investors. Those issues will not be resolved in the Texas Action, if for no other reason than Compton is not a party. *See Cecchini v. Cetera Fin. Grp., Inc.*, No. 19-CV-80215-KAM, 2019 WL 12872954, at *3 (S.D. Fla. Dec. 18, 2019) (finding issues not substantially similar where the federal tortious interference claim depended on the

conduct and motivation of defendants who were not parties to the state breach of contract action).

The Eleventh Circuit has cautioned that where there is substantial doubt as to whether proceedings are parallel, abstention is inappropriate. *Acosta*, 478 F. App'x at 622. Here, there is far more than substantial doubt. Compton is not a party to the Texas Action, the Texas court cannot adjudicate Plaintiffs' claims against him, and abstention would not eliminate the need for this Court to resolve substantive issues.

At a minimum, Compton has failed to demonstrate that substantial doubt does not exist. Accordingly, the threshold requirement of parallel proceedings is not satisfied, and this Court need not consider the *Colorado River* factors.

**b. This Case Does Not Present the Clearest of Justifications for the Surrender of Jurisdiction.**

Even if Compton could establish that the Texas Action and this proceeding are parallel—which he cannot—abstention would still be improper. *Colorado River* abstention is "still only warranted in exceptional circumstances." *Jackson-Platts*, 727 F.3d at 1141. None exist here.

**i. Factor 1: No In Rem Proceeding.**

The first factor applies only where a court has assumed jurisdiction over property. *Jackson-Platts*, 727 F.3d at 1141. Neither this Court nor the Texas court has assumed jurisdiction over any property. Accordingly, contrary to Compton's assertion, this factor does not favor abstention. *Ambrosia Coal*, 368 F.3d at 1332

("Because the relevant cases are not proceedings in rem, neither court has jurisdiction over property, and the first *Colorado River* factor does not favor abstention.").

Compton nevertheless contends that this factor "may lean toward abstention" because the Texas injunction "encompass[es] the rights concerning these types of property interests." ECF No. 16 at 17. That argument conflicts with Eleventh Circuit precedent. In *Ambrosia*, the Eleventh Circuit rejected a similar argument, explaining that treating a case as involving property merely because it concerns the use or development of land would constitute a "clear misapplication of *Colorado River*." 368 F.3d at 1332.

This factor does not support abstention.

**ii. Factor 2: No Inconvenience.**

Compton contends that the inconvenience of litigating in Florida "strongly favors" abstention. ECF No. 16 at 18. It does not.

As an initial matter, Compton's argument assumes that the Texas court is a viable forum capable of exercising jurisdiction over him. It is not. Moreover, even assuming Texas is a proper forum, Compton fails to demonstrate that Florida is meaningfully more inconvenient.

The inquiry focuses primarily on "the physical proximity of the federal forum to the evidence and witnesses." *Jackson-Platts*, 727 F.3d at 1141. Yet Compton

identifies no evidence or witnesses located in Texas that make this forum substantially more burdensome. The defendants and potential witnesses in the Texas Action are dispersed throughout the country, including South Dakota, Idaho, and Minnesota. ECF No. 16-3 at ¶¶2–15. Florida is no more inconvenient for those witnesses than Texas.[11]

Any discovery concerns can be addressed through modern litigation practices, including remote depositions. *See Azurin*, 2024 WL 1258824, at *4 ("To minimize the inconvenience, the parties can take the option of conducting some of the litigation remotely."). Compton likewise identifies no evidence requiring in-person discovery in Texas. *See Am. Soc'y for the Prevention of Cruelty to Animals v. Lavalette*, No. 25 civ. 5016 (CM)(KHP), 2025 WL 3077761 (2025) ("I will not pretend that, in this day and age of electronic discovery, it would seriously inconvenience the parties to litigate in either state.").

Compton therefore has not shown that litigating in this Court would impose an inconvenience sufficient to support abstention. *See Am. Bankers*, 891 F.2d at 885 (noting that while New York may be slightly more convenient than Florida, "the inconvenience of the federal forum is not so great that this factor points toward dismissal").

[11] Many of these same Defendants in the Texas Action have filed an interlocutory appeal contesting the Texas court's jurisdiction over them. *See* ECF No. 16 at 3 & n.2.

This factor does not support abstention.

**iii. Factor 3: Relative Progress of Proceedings.**

Compton argues that the status of the Texas Action "amplifies the risk of conflicting determinations" and warrants abstention. ECF No. 16 at 18. The Eleventh Circuit has repeatedly rejected that argument. A "pending state court case ordinarily does not bar a federal case concerning the same dispute, and the potential for conflicting adjudications, standing alone, is not enough to justify abstention." *Taveras*, 89 F.4th at 1286.

Compton's reliance on *Shell v. Schwartz*, No. 07-61261-CIV, 2008 WL 11422553, at *5 (S.D. Fla. Feb. 5, 2008), is unavailing. Unlike *Shell*, the appeals in the Texas Action are interlocutory appeals. More importantly, the Texas Action cannot provide complete relief because the Texas court lacks jurisdiction over Compton. Accordingly, any comparison of the relative progress of the proceedings is immaterial. This factor does not support abstention.

**iv. Factor 4: No Piecemeal Litigation.**

Contrary to Compton's assertion, this factor does not "weigh heavily in favor of abstention." ECF No. 16 at 19. Compton's argument again assumes that the Texas Action involves the same parties and issues as this case. It does not. Compton is not a party to the Texas Action, and the Texas court cannot adjudicate Plaintiffs' claims against him.

It is well-settled that "a pending state court case ordinarily does not bar a

federal case concerning the same dispute, and the potential for conflicting adjudications, standing alone, is not enough to justify abstention." *Taveras*, 89 F.4th at 1286 (11th Cir. 2024). "Run of the mill piecemeal litigation will not do." *Jackson-Platts*, 727 F.3d at 1142. Rather, this factor favors abstention only where concurrent proceedings create piecemeal litigation that is "abnormally excessive or deleterious," such as cases involving "property-specific concerns." *Taveras*, 89 F.4th at 1287. This case presents no such concerns.

The Eleventh Circuit has emphasized that dual proceedings—and their resulting "unremarkable repetition of efforts"—do not warrant abstention:

> "Although the dual proceedings in this instance will likely result in some unremarkable repetition of efforts and possibly some piece-by-piece decision-making, there is no indication that piecemeal litigation poses any greater waste or danger here than it does in the vast majority federal cases with concurrent state counterparts."

*Ambrosia Coal*, 368 F.3d at 1333.

Compton invites this Court to abstain so that it may eventually "render a more accurate decision." ECF No. 16 at 19. The Eleventh Circuit has not approved that standard, rather, it has "emphasized" that "federal courts are almost invariably obligated" to not abstain. *Ambrosia,* 368 F.3d at 1333.

Accepting Compton's argument would mean this factor favors abstention in virtually every federal case involving a concurrent state proceeding. The Eleventh Circuit has rejected that approach. *Ambrosia Coal*, 368 F.3d at 1333 (rejecting the

district court's reasoning that it should abstain because both cases addressed the validity of an agreement, noting such reasoning was "misguided" and that under that interpretation, "the [piecemeal] *Colorado River* factor would seemingly support abstention in every federal case that has a parallel state case"). This factor does not support abstention.

**v. Factor 5: Federal Law Provides the Rule of Decision in Part.**

The fifth factor also does not support abstention. This factor examines whether federal or state law provides the rule of decision. *Jackson-Platts,* 727 F.3d at 1143. Here, federal law governs Count I, and Compton concedes that point. ECF No. 16 at 20. Nevertheless, he contends this factor favors abstention. That argument conflicts with Eleventh Circuit precedent.

First, the presence of both state and federal claims does not mean abstention is warranted. *Taveras*, 89 F.4th at 1288 ("[I]n instances where a case includes both state and federal claims and both courts are capable of adjudicating both types of claims, this factor does not weigh for or against abstention."). Thus, the presence of a state claim here does not support abstention.

Second, even where no federal issue exists, the Eleventh Circuit has held that this factor does not favor dismissal. *Am. Bankers*, 891 F.2d at 886 ("There is no federal issue in this case, but this does not counsel in favor of dismissal."). The

presence of one federal claim and one state claim therefore provides no basis for abstention.

Third, Plaintiffs' tortious interference claim does not present complex state-law issues warranting abstention. *Jackson-Platts*, 727 F.3d at 1143. Federal courts routinely resolve state-law claims such as this.

Fourth, despite Compton's insistence, ECF No. 16 at 21, the fact that Plaintiffs asserted claims against different defendants in state and federal court provides no basis for abstention. To the contrary, the Eleventh Circuit has emphasized that federal courts "are almost invariably obligated to exercise otherwise valid jurisdiction" even where concurrent state proceedings exist. *Ambrosia*, 368 F.3d at 1333. This is especially true where Plaintiffs could not have sued Compton in the Texas Action.

Compton is also incorrect that Count II in this action duplicates the Texas Action's "Tortious Interference with Existing Business Relations" claim. The Texas claim does not encompass Compton's alleged interference with Plaintiffs' contracts with the Eckard Investors. This factor does not support abstention.

**vi. Factor 6: The State Court Cannot Adequately Protect Plaintiffs' Rights.**

Compton again misstates the inquiry by suggesting that abstention is appropriate unless the state forum is inadequate. ECF No. 16 at 22. Binding precedent establishes the opposite. The question is whether exceptional

circumstances justify surrendering federal jurisdiction—not whether the state court's adequacy prevents surrender of jurisdiction. *Am. Bankers*, 891 F.2d at 886 ("[O]ur task in cases such as this is not to find some substantial reason for the *exercise* of federal jurisdiction by the federal court; rather, the task is to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' ... to justify the surrender of jurisdiction.").

Compton suggests abstention is proper because the state forum is not inhospitable to Plaintiffs' DTSA claim. But the fact that a state court may adequately protect Plaintiffs' rights does not favor abstention; it merely renders the factor neutral. *Id.* ("[the] fact that both forums are adequate to protect the parties' rights merely renders this factor neutral . . . .").

Here, however, the Texas Action cannot adequately protect Plaintiffs' rights because the Texas court lacks personal jurisdiction over Compton—a fact he does not dispute. ECF No. 16 at 24. Without jurisdiction over Compton, the Texas court cannot adjudicate Plaintiffs' claims against him or protect Plaintiffs' rights. Abstention is therefore improper. *See Moses H. Cone*, 460 U.S. at 28 ("the decision to invoke *Colorado River* necessarily contemplates that the federal court will have nothing further to do in resolving any substantive part of the case. . . ."); *Taylor Ridge Estates, Inc. v. Statewide Ins. Co.*, No. Civ. 4-01-CV-90058, 2001 WL 1678745 at *3 (S.D. Iowa Oct. 1, 2001) (refusing to deem state forum adequate

where there was a pending motion to dismiss for lack of personal jurisdiction).

Compton's position again presents an irreconcilable contradiction. He refuses to concede that the Texas court has jurisdiction over him yet asks this Court to surrender jurisdiction in favor of that same proceeding. He cannot "have [his] cake and eat it too." *Azurin*, 2024 WL 1258824, at *4. At a minimum, there is substantial doubt that the Texas Action can protect Plaintiffs' rights against Compton, making abstention improper. *Moses H. Cone*, 460 U.S. at 28 ("If there is any substantial doubt as to this, it would be a serious abuse of discretion to grant the stay . . . ."). Far from supporting abstention, this factor weighs against relinquishing jurisdiction.

**vii. The Additional Factors Do Not Favor Abstention.**

The additional considerations identified by the Eleventh Circuit likewise do not support abstention. First, this case does not involve a federal statute reflecting a policy favoring abstention. *Ambrosia Coal*, 368 F.3d at 1331. Contrary to Compton's assertions, the fact that state courts possess jurisdiction to hear DTSA claims does not establish such a policy.

Second, there is no evidence that this federal action is vexatious, reactive, or motivated by forum shopping. *See Cecchini*, 2019 WL 12872954, at *5–6 (finding this factor did not favor abstention where there was no colorable assertion of forum shopping or dissatisfaction with state court rulings). Plaintiffs did not file this action because they were dissatisfied with rulings in the Texas Action. Indeed, the Texas

Action defendants—not Plaintiffs—are the parties challenging those rulings. ECF No. 16 at 3 & n.2.

**CERTIFICATE OF COMPLIANCE WITH WORD LIMITATION**

Pursuant to Rule 7.1(F), N.D. Fla. Loc. R., undersigned counsel certifies that the motion and incorporated memorandum of law above contains 7998 words.

Dated this 24st day of July, 2026.

*/s/Alan L. Goodman*
Alan L. Goodman
Fla. Bar No.: 936560
John H. Adams
Fla. Bar No.: 13208
James T. Moore, Jr.
Fla. Bar No.: 70023
**GRAYROBINSON, P.A.**
2255 Glades Road, Suite 301E
Boca Raton, Florida 33431
Tel: 561-405-4262
Email: Alan.goodman@gray-robinson.com
Tim.moore@gray-robinson.com
John.adama@gray-robinson.com
Holly.Webb@gray-robinson.com
*Counsel for Plaintiffs*

**SCHEEF & STONE, L.L.P.**
2600 Network Blvd., Suite 400
Frisco, TX 75034
(214) 472-2100 Telephone
(214) 472-2150 Telecopier

By: /s/ *J. Mitchell Little*
J. Mitchell Little
State Bar No. 2403788
**Pro Hac Vice Admission**
Mitch.little@oslidcounsel.com

By: *<u>/s/ Logan Miller</u>*
Logan C. Miller
State Bar No. 24126747
**Pro Hac Vice Admission**
<u>logan.miller@oslidcounsel.com</u>

## <u>CERTIFICATE OF SERVICE</u>

I certify that on July 24, 2026, a true and correct copy of the foregoing was submitted to the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*<u>/s/Alan L. Goodman</u>*
Alan L. Goodman